# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8928 | **DATE** | 2/4/2003 |
| **CASE TITLE** | Financial Management Services, Inc. vs. Coburn Supply Co., Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. A status hearing is set for 8:45 a.m. February 7, 2003 to discuss what order should be entered to implement this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | FEB 0 5 2003 date docketed | 17 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2/4/2003 date mailed notice | |
| SN | courtroom deputy's initials | SN mailing deputy initials | |
| | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FINANCIAL MANAGEMENT SERVICES, INC.,

    Plaintiff,

v.

COBURN SUPPLY COMPANY, INC., et al.,

    Defendants.

No. 02 C 8928

## MEMORANDUM OPINION AND ORDER

Coburn Supply Company, Inc. ("Coburn"), one of two defendants in this diversity of citizenship case, has attacked this action by Financial Management Services, Inc. ("Financial Management") as being improperly lodged in this judicial district under 28 U.S.C. §1391(a)[1] and, if that argument were to prove unsuccessful, as more appropriately transferable to the Eastern District of Louisiana under Section 1404(a). Financial Management has filed a responsive memorandum, so that the first (and dispositive) issue is ripe for resolution.

### Propriety of Venue

Financial Management acknowledges that it must look to the second of the three alternatives under Section 1391(a) to support bringing this action in the Northern District of Illinois--its contention that this is "a judicial district in which a

---

[1] All further references to Title 28's provisions will simply take the form "Section--."

substantial part of the events or omissions giving rise to the claim occurred." But then Financial Management proceeds to lard up its description with a detailed account that focuses on that issue, not in terms of the assertedly wrongful conduct by Coburn (the properly relevant consideration, but rather in terms of what Financial Management does in Illinois to carry out its business. Although Financial Management's narrative does begin with a trip by a Coburn representative to Illinois to hear a talk by Financial Management's then President-CEO (probably back in 1999) that led to Coburn's execution of a Memorandum Agreement ("Agreement") with Financial Management on April 30, 1999,[2] all of Financial Management's other particularized recitals (at its Mem. 3-6) are devoted exclusively and at great length to its own Illinois-based activity.

But as to Coburn, its purported Illinois "connection" is

---

[2] Two things are worth noting about that. To begin with, the Declaration of Financial Management's current President-CEO Carol Delgado ("Delgado") is careful to specify that Financial Management executed the Agreement in Illinois. It might have been guessed from the acumen of Financial Management's lawyers (who of course authored the affidavit) that the affidavit's silence as to Coburn's place of execution signifies that it signed the document at its home base in Louisiana, and indeed Coburn's Amended Answer ("AA") ¶110 says exactly that. Second, and of greater significance, not a word is said in Delgado's Declaration or in the exquisite factual detail set out in Financial Management's Memorandum about any Coburn representative ever having set foot in Illinois at any time thereafter--and again Coburn's AA says that no such contact ever took place during the nearly four years that have elapsed since the Agreement was signed.

limited to its being identified as "a member of Embassy Group, Ltd., which is a 100% member-owned, $2.8 billion Illinois corporation" (Mem. 3-4)--an obvious red herring in terms of any claimed Illinois activity by Coburn itself (see the Embassy Group, Ltd. website, Ex. B to Financial Management's Memorandum, a copy of which is attached to this opinion). As for Coburn itself, even though its activities in Louisiana (where it is situated) do give rise to activity by Financial Management in Illinois, the vital fact for venue purposes is that Coburn's activity is limited to the states of Texas and Louisiana.

It must be remembered that the relevant consideration under Section 1391(a)(2) is where "a substantial part of the events or omissions giving rise to the claim occurred," and Financial Management's own Mem. 1 characterizes its contentions as "claims of fraud, conspiracy and breach of contract." And when the matter is looked at objectively, as this Court is obliged to do, there is not the slightest question that all of the "events or omissions" that have "giv[en] rise to the claim[s]"--the alleged fraud, conspiracy and contractual breaches--took place in Louisiana and Texas, where Coburn and its alleged fellow culprit Lamonte's Heating and Cooling Sales, LLC, took all of the steps that have caused the claimed injuries of which Financial Management complains.

It will not do to say, "Well, after all, the contract that

3

was breached was an Illinois contract" (leave aside for the moment the potential problematic issue on that score suggested in n.2). That argument could have force if this lawsuit had instead charged (say) fraud or other misconduct in connection with the negotiation or execution of the Agreement. But the entry into the Agreement is no more "a substantial part of the events or omissions giving rise to the claim" than, for example, the fact of a person's getting aboard a Metra train in Highland Park would fit that description if a claim were to be based on an accident sustained by that same commuter passenger who, after leaving the train and beginning to walk to the office, were to be hit by a speeding taxi that runs a red light on Wacker Drive. That is, the hypothesized accident would certainly not have happened "but for" the train ride that preceded it, in the same sense that the asserted fraud and breach of contract in this case would not have happened "but for" the contract signing that preceded them (in this instance by years, not by minutes or hours). Just as in other areas of law a mere "but for" relationship does not automatically equate to proximate cause, here such a "but for" relationship does not cause the years-earlier signing of the Agreement to constitute "a substantial part of the events or omissions giving rise to the claim[s]" that arose much later.

Financial Management seeks to avoid that obvious common sense meaning of the Section 1391(a)(2) requirement by urging

4

that it suffices for venue purposes that the economic harm from Coburn's complained-of actions has been felt in Financial Management's pocket here in Illinois. On that score it attempts to point to this Court's opinion in Club Assistance Program, Inc. v. Zukerman, 594 F.Supp. 341 (N.D. Ill. 1984) and to our Court of Appeals' opinion (approving and relying upon Club Assistance) in FMC Corp. v. Varonos, 892 F.2d 1308 (7th Cir. 1990). But those cases speak *not* to the permissible application of the venue statute, but rather to a quite different question: the permissible outer reach of the Illinois long-arm statute, which allows defendants to be haled into court here so long as the Constitution's Due Process Clause allows that result.

Indeed, it takes only a moment's thought to realize that if economic harm to a plaintiff were really enough to satisfy Section 1391(a)(2), neither of the other alternatives--Section 1391(a)(1) and (a)(3)--would ever have to be looked at, for a plaintiff could *always* bring suit at its home base on the premise that it has suffered harm there. So Financial Management's contention in that respect is simply wrong--it would prove entirely too much, by essentially eviscerating and making irrelevant part of what Congress has prescribed in the venue statute.

What has just been said here is really a much extended version of the proposition as to the proper reading of Section

1391(a)(2) that is far more succinctly set out in 17 Moore's Federal Practice §110.04[1], at 110-42 (3d ed. 2002):

> Generally, the court must focus on activities of the defendant, not the plaintiff.

In somewhat more expanded form, what was said in Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995) in rejecting a contention like Financial Management's advanced by a plaintiff in a "passing off" claim under the Lanham Act, where defendant's conduct took place outside of the forum but plaintiff's economic harm was felt inside the forum, could well have been written for this case:

> While the present venue statute was certainly intended to expand the number of venues available to a plaintiff, we are reluctant to impute to Congress an intent to abandon altogether the protection of defendants as a relevant consideration in venue matters. We think it far more likely that by referring to "events or omissions giving rise to the claim," Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.
>
> *   *   *
>
> [W]hile damages or potential adverse economic effect are a necessary part of a Lanham Act claim, if Congress had wanted to lay venue where the plaintiff was residing when it was injured, it could have said so expressly.[3]

---

[3] [Footnote by this Court] It is worth observing (as this Court earlier noted in its January 15 memorandum order) that if Financial Management had wished to require any litigation relating to or arising out of the Agreement to be brought here, it could simply have included such a mandatory forum selection clause in Agreement ¶12. As the Agreement reflects, it is not only a pre-printed form document prepared by Financial Management itself (with its name preprinted both on the first page and on signature page 7), and with blanks on pages 1 and 7 where the name and signature of a "Member" such as Coburn are to be filled

In summary, Coburn has prevailed on the first branch of its argument: This Northern District of Illinois is not a proper situs for this action under the applicable venue statute. That makes it unnecessary to consider the considerably closer question of what the appropriate balancing test under Section 1404(a) would have produced if venue would have been properly lodged here.[4] But considerations of transfer are still relevant, for taking that step under Section 1406 would spare Financial Management the trouble and expense of having to file a new Complaint and to pay a new filing fee for bringing suit in Louisiana if this action were to be dismissed. Accordingly, a

---

in, but in this instance not a word of the form document has been changed in any respect--no negotiation of any of its terms has taken place. Nothing then prevented Financial Management from inserting as part of the Agreement a venue consent or waiver, specifying on a take-it-or-leave-it basis that all such litigation must take place here. Financial Management did not do so, instead stating only that Illinois law is to apply to the Agreement (interestingly enough, that would add nothing to the balancing process under Section 1404(a) if that analysis had to be undertaken: It is one of the considerations that the Section 1404(a) cases bring into play anyway, and under Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) a transfer would carry this forum's law with it in any event). So although this Court has not relied on that omission of a mandatory venue clause in reaching its conclusion, the omission would also tend to cut against Financial Management's position here.

[4] In that respect, some of the factors set out in the statute itself and in the caselaw that fleshes out its "interest of justice" criterion (in that respect importing the forum non conveniens considerations enumerated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)) point in Financial Management's direction, while others point toward Coburn and hence toward transfer.

status date is set for 8:45 a.m. February 7, 2003 (with Coburn's Louisiana counsel permitted to participate by telephone) to discuss what order should be entered to implement this opinion.

*[signature]*
Milton I. Shadur
Senior United States District Judge

Date: February 3, 2003





**United We Stand**

# EMBASSY GROUP LTD.

**Embassy Group Ltd.** is a 100% member-owned, 2.8 billion dollar corporation consisting of the industry's leading independent plumbing, HVAC and PVF wholesalers. These wholesalers are committed to remaining strong and independent.

Established in 1991, the group was founded on the principle that equal participation by a limited group of Premier Plumbing, HVAC and PVF Wholesalers partnering with the Top Industry Plumbing, HVAC and PVF Vendors would result in a mutually rewarding relationship for all. This union also insures the individual Members' business remains viable in the face of changes, consolidations and chain competitors entering the markets today.

The Embassy Group consists of 62 premier plumbing, PVF and HVAC wholesalers operating over 500 branch locations nationwide generating a multi-billion dollar volume in plumbing and related specialty and professionally installed products. The Embassy Group is strategically aligned with the top 73 plumbing and specialty brand manufacturers nationwide. (Click on Members or Vendors above for a complete listing.) Consolidating purchasing and promotional power to secure increased market share for the Embassy partnership is the ultimate goal.

The Group requires membership participation by committee in most management activities and functions. This system encourages group participation and member involvement in the decision making process. Embassy is governed by a 7-member Board of Directors, as well as a Vendor Committee, Long Range Planning Committee, HVAC Committee and Decorative Hardware Committee.

In a world of cloned products, persuasive images and new technology, independent wholesa in human resources. Member employees have a commitment to in-depth product knowledge development and technical expertise, which provide the competitive edge.

Thank you for visiting our site. If you are a wholesaler or manufacturer interested in becomin unique organization, please contact the Embassy Group office at info@embassygroupltd.con

**Embassy Staff**

Walter P. Gumm  
President  
wgumm@embassygroupltd.com

Maureen K. Cosyns, CMP  
Executive Vice President  
mcosyns@embassygroupltd.com

Erica M. Romero  
Program Administrator  
erica@embassygroupltd.com

**Embassy Group Ltd.**
P.O. Box 843
Elgin, Illinois 60121-0843
Phone: (847) 468-0180
Fax: (847) 468-0183
info@embassygroupltd.com

© 2003 Embassy Group Ltd.